JOHN P. DAVIS v. MICHAEL HARTLERODE.

FILED OCTOBER 17, 1893.    No. 4706.

Sales: BREACH OF WARRANTY: RESCISSION BY PURCHASER. Certain notes secured by chattel mortgages were given for a corn-sheller which was warranted to shell 6,000 bushels per day with eight horses to furnish power. On a trial the machine could not be made to work, and the expert sent by the company was unable to put it in running order. *Held*, That the purchaser was justified in returning it promptly after the discovery of the defects.

ERROR from the district court of Clay county. Tried below before MORRIS, J.

*Thomas H. Matters*, for plaintiff in error.

*J. L. Epperson, contra.*

MAXWELL, CH. J.

On the 22d day of December, 1888, the defendant in error, Michael Hartlerode, made, executed, and delivered to the Weir-Shugart Co., of Council Bluffs, Iowa, four promissory notes of that date, maturing as follows: The first on March 1, 1889; the second on May 1, 1889; the third on December 1, 1889, and the fourth on March 4, 1890. Each of said notes was for the sum of $125, and the same were secured by chattel mortgage on the following described property: " 1 Ottawa mounted sheller, with feeder, elevator, and cob-stacker, and 1 ten-horse Woodbury mounted power; 1 black horse, about ten years old, with three white feet; 1 bay mare, about ten years old, weight about 1,100 pounds; 1 bay, horse about nine years old, weight about 1,300 pounds, has one white front foot; 1 bay horse, about eight years old, has stripe in face, weight 1,000 pounds; red cow, three years old; 1 heifer (red), two years old; 1 red heifer, two years old; 15 head of black shoats, will weigh from 50 to 100 pounds each." Immediately upon receipt of said notes the Weir-Shugart Co. indorsed and delivered the same, and assigned said mortgage to the appellant herein. On the 22d day of August, 1889, two of said notes having matured, and the appellee having failed to make payment, the appellant demanded the property described in the mortgage, which Hartlerode refused to deliver, and on said day the appellee caused a replevin summons to be issued out of the justice court of T. H. Spicer, justice of the peace within and for Clay county, Nebraska, and the following property was taken under the

58

writ: 1 black horse, ten years old; 1 bay horse, nine years old; 1 red heifer, two years old; 1 red heifer, two years old; 15 head of shoats. Said property was appraised at the sum of $141. On the return day of the summons the defendant filed an affidavit for a change of venue and by stipulation the cause was transferred to the docket of W. H. Canfield, county judge of Clay county, Nebraska, and the cause was set for trial September 24, 1889.

On the 24th day of September, 1889, a jury was called and trial had, which resulted in a verdict in favor of the defendant, in which it was found that the right of property and right of possession were in Michael Hartlerode. The value of the property was found to be $175, and damages in the sum of $25 were awarded for the wrongful detention thereof. The plaintiff in error filed an undertaking as required by law and appealed from the judgment rendered in the county court. The plaintiff in error filed a transcript of the proceedings, together with all the original papers, in the office of the clerk of the district court of Clay county.

At the May term, 1890, of the district court the cause was tried to a jury, who found a verdict in favor of the defendant Michael Hartlerode, and found that the right of property and right of possession at the commencement of this suit were in the defendant Michael Hartlerode, and that the value of the property was $220, and that his damage for the wrongful detention thereof was $11.70. The plaintiff filed a motion for a new trial containing ten assignments of error, which motion was by the court overruled, to which the plaintiff in error duly excepted, and now brings this cause into this court for review on the errors assigned. The notes in this case were given for a corn sheller. The defendant testifies in regard to his purchase of the sheller as follows:

Q. Did you have any business transaction with A. B. Smith?

A. Yes, sir.

Q. State what that was.

A. I bought an Ottawa corn thresher.

Q. State the circumstances connected with the purchase of it.

A. I don't know just how to get at that.

Q. Just tell about it, the conversation, and how you came to buy it.

A. I was in there one day and Smith said he wanted to sell me a corn thresher; and I said all right, I wanted to buy one; and he said " here is an Ottawa cylinder thresher. It will run with eight horses and shell 6,000 bushels of corn."

Q. Did he sign a written order for this?

A. Yes, sir.

Q. And you got a written warranty?

A. Yes, sir; I did have.

Q. Can you read?

A. No, sir.

Q. Do you know anything about this piece of paper? Look at it and see if you can tell.

A. I can tell something about it if you read it.

Q. You may go ahead and state what became of that warranty and what you did with it.

A. After the agent made the warranty and gave it he said he wanted to look at it, and then he said " I want to send it back to the company," and he never gave it back to me any more.

Q. Did he read it to you?

A. He read it himself.

The court:

Q. Can you read?

A. No, sir.

Q. And what was there on the paper he read to you?

A. Yes, sir; and then he took the warranty back, and said he had to send it back to the company, and they had to fix something on it.

Q. Did he read it to you?

A. Yes, sir.

Q. What did he read?

A. The sheller was warranted to shell 6,000 bushels and leave the cob in as good condition as any other machine; and I said if it would run that way I would take it; and he said that is what the warranty says. After that he told me the same thing again on the train. When it came we took it out home to try it, and it would not shell at all, and the next day he said he would send for the expert, and the next day Mr. Lewis and Joseph Renie came up and said they would make the sheller run with eight horses. I got the horses on, and they started the teams up. It run as much as five minutes and then it stopped. They then started it again, and I think they shelled about thirty-five bushels in half a day. They stayed for dinner and so did the teams, and when they got ready to go I said I would bring the machine in, and the next day I hauled it in his yard, and set it to work. I don't mind what Smith said; and after I had unhitched from the machine and returned it, I wanted my notes back, and he said, "I can't give up the notes until I telegraph the company. I want to save myself;" and after he was gone a little while, probably as much as a quarter of an hour, he came back, and said he wouldn't give up the notes.

Q. State whether or not Smith said he had them or not.

A. Yes, sir; Smith said he had them.

Q. When you returned the thresher?

A. Yes, sir; the thresher was out three days and I took it back the next morning.

William Johnson, a witness called by the defendant, testified:

Q. Are you acquainted with the defendant?

A. Yes, sir.

Q. Do you know about his buying a corn sheller of A. B. Smith in December, 1888?

Davis v. Hartlerode.

A. Yes, sir.

Q. Tell the jury what you know about it.

A. I was working with Mike and he went to Fairfield one day and Smith wanted to know of Mike if he wanted to buy a corn machine, and he said he didn't know but what he did, and he said I have got a corn machine and I would like to sell you one, and so they kind of talked together and made a bargain. He said that it would shell 6,000 bushels a day.

Q. With how many horses?

A. Eight horse power.

Q. Do you know anything about the trial of the machine?

A. Yes, sir.

Q. Were you there working that day?

A. Yes, sir.

Q. Tell the jury how the thresher worked.

A. Well, sir, they set the machine and tried to thresh with it, and it stumped out ten horses. I was scooping, and I don't believe I scooped ten minutes before we would have to shut off the feed.

Four other witnesses testify to substantially the same facts. Several witnesses were called on the part of the plaintiff, but they fail to show that the machine was such as was called for by the warranty. It is very evident from the testimony that the machine was defective, and the defendant was justified in returning it promptly as he did, and his notes should have been returned to him. The judgment is right and is

AFFIRMED.

THE other judges concur.